UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| DONSURVI CHISOLM, | ) | C/A No. 4:15-1806-RBH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| ASSOCIATE WARDEN THOMPSON, CAPT. | ) | |
| BRIGHTHART, LT. MILLER, CPL. | ) | |
| HAMILTON, OFC. ACKERMAN, UNKNOWN | ) | |
| MALE BLACK OFFICER, AND NURSE | ) | |
| MARCHELLE K. BROWN, | ) | |
| | ) | |
| Defendants. | ) | |
| —————————————————— | ) | |

## PROCEDURAL BACKGROUND

Plaintiff, a prisoner proceeding *pro se*, filed this action under 42 U.S.C. § 1983[1]

on April 28, 2015, alleging a violation of his constitutional rights. Plaintiff is currently

housed at the McCormick Correctional Institution. At all times relevant to the

allegations contained in the complaint, Plaintiff was housed at Lieber Correctional

Institution (LCI). On October 5, 2015, Defendants Thompson, Brighthart, Miller,

Ackerman, and unknown black male officer filed a motion for summary judgment. As

the Plaintiff is proceeding *pro se*, the court issued an order on or about October 6,

2015, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising

Plaintiff of the motion for summary judgment procedure and the possible

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions
of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this is a
dispositive motion, the report and recommendation is entered for review by the district judge.

consequences if he failed to respond adequately.  After an extension, Plaintiff filed a response in opposition to the motion on December 9, 2015. Plaintiff filed a motion for summary judgment on December 9, 2015. Defendants (Except Brown) filed a response on December 15, 2015.[2]

## DISCUSSION

## STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court  assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is

---

[2] Defendant Nurse Brown filed a motion for summary judgment on January 21, 2016. This motion is addressed in a separate report and recommendation.

2

proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317.  Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial.  Fed.R.Civ. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## ARGUMENT OF PARTIES/ ANALYSIS

On July 3, 2014, while an inmate at LCI housed in the Special Management Unit (SMU), Plaintiff alleges that he fell down the stairs while returning to his cell from the computer room injuring his back and shoulder. (Complaint). Plaintiff was placed in the computer room to work on "Lawwork" by Officer Simmons and Corporal Hamilton. Id. Plaintiff asserts that he was in belly chains and cuffs but not leg restraints. Id. Plaintiff alleges that he noticed the door to the computer room was not secure pursuant to SCDC policy. Id. Plaintiff states that he left the computer room with the intention of going back to his upstairs cell to wait on the officers to return to

4

let him in his cell. Id. Chisolm alleges that he "headed up the stairs and apparently fell down the stairs and lost consciousness" when numerous inmates began making noise to gain the officers attention. Id. Plaintiff alleges that he was awakened by Officer Simmons who was "lightly tapping him in the face." Id. Plaintiff contends that he immediately asked for medical attention and while waiting, numerous officers gathered in the area where he had fallen. Nurse Brown came to him, and he informed her of his injuries. Plaintiff told Nurse Brown that he was in pain and did not want to move as instructed by her. Id. Nurse Brown proceeded to move his legs off of the bottom of the steps and reposition him away from the steps. Id. She told him he was fine and then left the area. Id. Plaintiff alleges medical indifference on her part. Id. Captain Brighthart, supervisor of SMU, came to Plaintiff and told him to get up and walk back to his room for security purposes. Id. Plaintiff told Capt. Brighthart that he was in pain and would not move himself and asked for proper medical attention. Id. Lt. Miller and Cpl. Hamilton came back to the area with numerous officers and supervised the use of force movement by picking him up and "drag him up the steps to his room" where he was positioned on his bed and left there without medical attention. Plaintiff asserts the action of the officers' was a violation of policy. Id. Plaintiff's cell mate attempted to get the attention of the supervisors due to Plaintiff continuing to ask for medical attention but was ignored by Capt. Brighthart and Cpl.

Hamilton. Id. Nurse Brown came around in the afternoon for "pill pass" and told Plaintiff he just needed Motrin and rest and that he could sign up for sick call. Id. Plaintiff asserts that he received Ibuprofen on July 4, 2014, and was informed the pills were from the nurse. Id. Plaintiff alleges that he was seen in sick call on July 10, 2014, by Nurse Arias[3] who refused his request for x-rays and an MRI. Id. Plaintiff alleges that his mother called Defendant Thompson and discussed Plaintiff's medical treatment. Id. Plaintiff was transferred to McCormick Correctional Institution on July 24, 2014, where he was seen by medical after signing up for sickcall. Id. Plaintiff alleges that after numerous x-rays and an MRI it was determined that he "did infact dislocate his shoulder." Id. Plaintiff alleges that he is/has received medication and physical therapy treatment. Id. Plaintiff seeks compensatory and punitive damages. Id.

## Defendants (Except Brown)

Defendants Thompson, Brighthart, Miller, Ackerman, and unknown Male Black Officer (hereinafter "Defendants") filed a motion for summary judgment attaching affidavits to their memorandum. Defendants attached the affidavit of Edward Ackerman who attests he is currently employed by the South Carolina Department of

---

[3] Nurse Arias is not a named defendant in this action.

Corrections (SCDC) as the maintenance supervisor at LCI. (Ackerman's affidavit, doc. #56-3). Id. At the time of the allegations in this action, he was an officer assigned to the SMU. Id. On July 3, 2014, he was assigned to work in SMU to transport inmates to recreation, showers and other areas. Id. While in the sallyport area of the SMU, Ackerman heard inmates hollering "man down" so he proceeded to the wing where the inmates were hollering and observed Plaintiff laying at the bottom of the stairs. Id. Ackerman attests that he asked Plaintiff what happened, and he responded that he fell down the stairs. Id. Ackerman questioned Plaintiff as to where the officer was that was escorting him to which Plaintiff responded that he did not know. Id. First Responders arrived shortly after Ackerman, and the medical department was contacted. Id. Plaintiff was not moved until medical personnel arrived to examine him. Id. Nurse Brown told the Plaintiff what she needed him to do so she could examine him, but he refused to cooperate. Id. Plaintiff was not in any apparent distress while being examined by Nurse Brown and was actually smiling at her during the time she was examining him. Id. After nurse Brown examined the Plaintiff, she stated that she did not see any type of injury and that he could return to his cell. Id. Plaintiff was given multiple instructions to stand up and return to his cell, but refused to do so. Id. Therefore, the officers picked up the Plaintiff and carried him to his cell. Id. Plaintiff did not make any additional complaints that day. Id. Ackerman attests

that he did not observe any officer act inappropriately in dealing with Plaintiff. Id. Oficers did not use any type of force in returning Plaintiff to his cell, but were required to carry him due to his refusal to walk.  Id.

Defendants submitted the affidavits of Lewiston Miller and Thomas Hamilton. (Docs. # 56-4 and #56-5). Miller attests that he is employed with the SCDC as a Lieutenant at LCI, and Hamilton attests that he is employed with the SCDC as a Sargent at LCI.  Id.  Both Miller and Hamilton assert that they recall an incident with the Plaintiff that occurred on July 3, 2014, in the SMU where they were assigned on that date but were not on the wing with the incident occurred.  Id.  They responded to the scene when they heard the call for First Responders and observed Plaintiff laying on the ground at the bottom of the stairs in SMU.  Id. Miller spoke with the Plaintiff who had no apparent injury and did not appear to be in any distress.  Id. However, medical personnel was contacted and the nurse responded to the scene where she examined the Plaintiff.  Id. While the nurse was examining the Plaintiff, he was smiling at her and did not appear to be in any type of discomfort or distress.  Id. Miller and Hamilton do not have any advanced medical training and rely on the expertise of the trained medical personnel to provide medical care to all inmates.  Id. After examining Plaintiff, the nurse stated that she did not see any injury and that he could return to his cell.  Id. Miller attests that Plaintiff was given multiple instructions to

8

stand up and return to his cell, but refused causing the officers to have to pick him up and carry him to his cell. (Miller affidavit). Hamilton attests that he observed Plaintiff after the incident standing at the flap of his cell door. (Hamilton affidavit). Neither Miller nor Hamilton recall Plaintiff making any additional complaints that day and did not observe any officer act inappropriately in dealing with the Plaintiff or use any type force in returning Plaintiff to his cell. (Miller and Hamilton affidavits).

Defendants submitted the affidavit of William Brightharp who attests that he is employed with the SCDC as a Captain at LCI. (Brightharp affidavit). There was an incident with the Plaintiff on July 3, 2014, in the SMU where inmates were generally placed because of disciplinary problems or assaultive violent behavior. Id. On July 3, 2014, Brightharp responded to SMU after hearing a call for First Responders, officers designated to respond to any type of situation where an officer needs assistance.  Id. Multiple officers responded to the scene. Id. Brightharp was informed that the Plaintiff had been in the computer room to do legal research, apparently someone did not properly secure the door to the room,  and Plaintiff left the computer room unescorted by an officer.  Id. Inmates housed in SMU are required to be escorted by an officer at any time they exit their cell. Id. Plaintiff was well aware of this fact and could have waited for an officer to escort him back to his cell but took it upon himself not to do so.  Id. When Brightharp arrived, Plaintiff was laying on the ground at the bottom of

9

the stairs in the SMU, and he spoke to the Plaintiff who did not have an apparent injury or appear to be in any distress. Id. Medical was contacted, and the nurse responded to the scene where she examined him. Id. During the time the nurse was examining the Plaintiff, he was smiling at her and still did not appear to be in any type of distress or discomfort. Id. Brightharp does not have any advanced medical training and relies on the expertise of the trained medical personnel. Id. After examining the Plaintiff, the nurse stated that she did not see any injury and that Plaintiff could return to his cell. Id. Brightharp is not aware of Plaintiff making any additional complaints that day, and Plaintiff was able to stand at his door to have his restraints removed, including lifting his legs so that the leg irons could be removed upon his return to his cell. Id. Brightharp did not observe any officer act inappropriately with Plaintiff. Id.

Defendants submitted the affidavit of Fred Thompson who attests that he is employed with the SCDC as Associate Warden at LCI and has broad supervisory responsibilities. (Thompson affidavit, doc. #56-7). Thompson asserts that he has no personal knowledge concerning the incident involving Plaintiff on July 3, 2014, and does not recall responding to and generally would not respond to an incident of this nature. Id. Additionally, while Thompson speaks to the parents of many inmates, he does not have any recollection of speaking with the Plaintiff's mother concerning his medical care. Id. Thompson does not have any advanced medical training and relies

10

on the expertise of the trained medical personnel to provide medical care to all inmates.  Id.

Defendants submitted the affidavit of Andre Powell who attests that he is employed by the SCDC as an officer at LCI. (Powell affidavit). Powell recalls an incident with the Plaintiff that occurred in the SMU on July 3, 2014, where he was assigned to work in the control room on this date.  Id. From the control room, Plaintiff was able to see both wings in the SMU and observed Plaintiff walking toward the stairway unescorted which is not supposed to occur. The SMU, now known as the Restricted Housing Unit, was the highest security level and most secure area of the prison used to house inmates who presented a high security risk.  Id. After he saw the Plaintiff, he heard Plaintiff state a couple of times "I'm gonna fall" and then watched Plaintiff lay down on the floor at the bottom of the stairs.  Id.  Plaintiff did not fall, but again intentionally laid down at the bottom of the stairs.  Id.  After Plaintiff laid down at the bottom of the stairs, other inmates began beating on their doors and hollering "man down."  Id.  Officer Simmons, who was on the wing, appeared and immediately called for First Responders as he was not aware what had occurred.  Id. Powell heard the Plaintiff claim that he fell and injured himself, but Powell saw him lay down on the floor.  Id. Powell informed Captain Brightharp and Lieutenant Miller of this fact when they arrived on the scene.  Id.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain" prohibited by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir.2008) (internal quotation marks omitted).

To show a defendant's deliberate indifference to a serious medical need, a prisoner must allege the defendant knew of and disregarded "the risk posed by" that need. Id. "[A]n inadvertent failure to provide adequate medical care" does not satisfy the standard, and thus mere negligence in diagnosis or treatment is insufficient to state a constitutional claim. Estelle, 429 U.S. at 105–06, 97 S.Ct. 285. Such indifference can be displayed, however, through the response of prison doctors and other institutional personnel to an inmate's medical needs, including ignoring an inmate's serious condition or delaying medically necessary treatment. Id. "A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir.2010) (vacating and remanding summary dismissal of complaint alleging three-month delay in dental treatment); see Smith v. Smith, 589 F.3d 736, 738–39 (4th

12

Cir.2009) (finding claim of delay in administering prescribed medical treatment stated an Eighth Amendment claim).

To state a claim of denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Id.

Under these principles, the Plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against non-medical personnel. The Defendants responded to the scene, spoke with the Plaintiff, called medical personnel to examine Plaintiff, and relied on the nurse's opinion that he could return to his cell after her examination of the Plaintiff. Based on Plaintiff's own allegations, the officers did not ignore or delay him medical treatment as they called medical personnel to come examine the Plaintiff before he was moved, and the officers could rely on the opinion of the medical staff. Therefore, it is recommended that any claims of medical indifference as to Defendants be denied.

**Excessive force**

13

Plaintiff alleges that the officers dragged him back to his cell thereby using excessive force. Defendants have moved for summary judgment on this issue.

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The predominate focus in a claim for excessive force is not on the extent of the injury but rather the nature of and justification for the inflicted force. Wilkins v. Gaddy, 599 U.S. 34, 37 (2010). The Eighth Amendment analysis requires inquiry at to whether a prison official "acted with a sufficiently culpable state of mind and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." Williams, supra.

In an excessive force claim, a claimant must meet a heavy burden to satisfy the subjective component. Whitley v. Albers, 475 U.S. 312, 321 (1986). The claimant must show that a correctional officer applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good faith effort to maintain or restore discipline. (Id.) (internal quotation marks omitted). The objective component is not as demanding because "[when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated whether or not significant injury is evidence." Wilkins v. Gaddy, supra, (internal quotation marks omitted).

14

In an excessive force claim, the state of mind is "wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. at 322. In Whitley, the Supreme Court identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." Whitley v. Albers, 475 U.S. 312, 321 (1986). Whether there is an Eighth Amendment violation in the context of a prison disturbance depends upon "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins, 130 S.Ct. 1175, 1178. See also Hudson v. McMillan, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).[4]

---

[4] While the United States Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim," this does not mean the extent or absence of serious injury is irrelevant. Wilkins , 130 S.Ct. at 1178. Instead, the extent of injury suffered is just one factor to account for in the analysis, "but does not end it." See Hudson, 503 U.S. at 7 (holding "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."). The extent of injury may also provide some indication of the amount of force applied. Wilkins, 130 S.Ct. at 1178. A de minimis use of physical force does not violate the Eighth Amendment, "provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. Thus, an inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Id.

It is undisputed that Plaintiff was escorted back to his cell in SMU after the Nurse examined him and said he could return. It is undisputed that Plaintiff was instructed to get up and walk back to his cell, but refused. However, Plaintiff states he was in pain and refused to move until he received proper medical attention. Even giving deference to Plaintiff's allegations that the officers drug him up the stairs and placed him back in his cell, Plaintiff fails to show that the Defendants did so "maliciously and sadistically for the very purpose of causing harm." Plaintiff's allegations fail to support a claim of excessive force. Plaintiff fails to allege any injury occurred from these allegations with regard to being returned to his cell. Plaintiff's allegations in his complaint are not sufficient to give rise to a genuine issue of fact as to whether constitutionally excessive force was used against the Plaintiff in this instance and should be dismissed.

## **QUALIFIED IMMUNITY**

Defendants deny that any of the alleged conduct or conditions complained of by Plaintiff gives rise to a constitutional violation. However, Defendants assert that, even if this Court concludes that the facts are sufficient to establish a Constitutional claim, they are entitled to qualified immunity.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting

16

> principles: the need to deter government
> officials from violating an individual's federal
> civil rights and the need for government
> officials to act decisively without undue fear
> of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether Defendant is protected by this immunity.

> Government officials performing discretionary functions
> generally are shielded from liability for civil damages
> insofar as their conduct does not violate clearly
> established statutory or constitutional rights of which a
> reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from
> liability for civil monetary damages if the officer's "conduct
> does not violate clearly established statutory or
> constitutional rights of which a reasonable person would
> have known."  "In determining whether the specific right
> allegedly violated was 'clearly established,' the proper focus
> is not upon the right at its most general or abstract level, but
> at the level of its application to the specific conduct being
> challenged."  Moreover, "the manner in which this [clearly
> established] right applies to the actions of the official must
> also be apparent."   As such, if there is a "legitimate
> question" as to whether an official's conduct constitutes a

> constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995).  As discussed above, the Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. However, even if there was a violation, Defendants are entitled to qualified immunity. The record before the court shows that Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. Defendants did not transgress any statutory or constitutional rights of Plaintiff of which they were aware in the exercise of their respective professional judgments. Thus, the undersigned recommends that summary judgment be granted as to these Defendants.

## ELEVENTH AMENDMENT IMMUNITY

The Defendants contend that the Plaintiff's §1983 claims against them for money damages in their official capacity are barred pursuant to Eleventh Amendment Immunity.  Defendants also argue that the action against them should be dismissed as a matter of law to the extent that they are sued in their official capacity because while acting in their official capacity as an employee of the SCDC, they are not a "person" under 42 U.S.C. §1983 and, therefore, not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently

intended as one against the state, the real party in interest.  If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.  The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity.  Will, supra at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the

state.  State officials may only be sued in their individual capacities.

There is no dispute that Defendants were/are employees of the SCDC at the time of the allegations in the complaint. Thus, they are entitled to Eleventh Amendment immunity from monetary damages in their official capacity.

## PENDENT JURISDICTION

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law  theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## CONCLUSION

The Plaintiff has failed to show that Defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983.  It is therefore, for the reasons stated herein,

RECOMMENDED that the Defendants' motion for summary judgment (doc.

# 56) be GRANTED IN ITS ENTIRETY and the case dismissed and Plaintiff's motion for summary judgment (Doc. #91) as to these Defendants be denied.

IT IS FURTHER RECOMMENDED that any outstanding motions be deemed MOOT.

Respectfully submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
February 24, 2016                    United States Magistrate Judge
Florence, South Carolina

The parties' attention is directed to the important information on the attached notice.