UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| DonSurvi Chisolm, a/k/a Don-Survi Chisolm, | ) ) ) | Civil Action No.: 4:15-cv-01806-RBH |
| | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER** |
| | ) | |
| Associate Warden Thompson, Capt. Brighthart, Lt. Miller, Cpl. Hamilton, Ofc. Ackerman, Unknown Male Black Officer, and Nurse Marchelle K. Brown, | ) ) ) ) | |
| | ) ) | |
| Defendants. | ) ) | |

Plaintiff DonSurvi Chisolm, a/k/a Don-Survi Chisolm ("Chisolm" or "Plaintiff"), currently incarcerated at McCormick Correctional Institution and proceeding *pro se*, brought this action pursuant to 42 U.S.C. § 1983 stating that Defendants violated his constitutional rights in the administration of medical attention he sought after he allegedly fell down a flight of stairs and alleging that several defendants used excessive force against him subsequent to the injury. [ECF #1]. He further alleges a general failure to protect claim because the correctional officers allegedly left the door to the computer room open, allowing him to leave and ascend the flight of stairs unaccompanied. [ECF #1]. At all times relevant to the allegations contained in his complaint, Plaintiff was housed at Lieber Correctional Institution ("LCI").

1

On October 6, 2015, Defendants Thompson, Brighthart,[1] Miller, Hamilton, Ackerman, and Williams (formerly identified as the "unknown male black officer") filed a motion for summary judgment [ECF #56], which is now before the Court. Defendant Marchelle Brown filed a motion for summary judgment on January 21, 2016 [ECF #109], which is also currently pending before this Court. Plaintiff filed his own motion for summary judgment [ECF #91] on December 9, 2015. All parties have had the opportunity to address these motions and have timely filed responses to the respective motions.

These motions are before the Court after issuance of the Reports and Recommendations of United States Magistrate Judge Thomas E. Rogers, III, filed on February 24, 2016. [ECF #124; ECF #125]. This matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(e). The Magistrate Judge recommends granting Defendants' respective motions for summary judgment in their entirety. On March 15, 2016, Plaintiff simultaneously filed objections to both of the Magistrate Judge's Reports and Recommendations . [ECF #129]. Defendants Thompson, Brightharp, Miller, Hamilton, Ackerman, and Williams filed a reply to Plaintiff's objections on March 18, 2016. [ECF #131]. Defendant Brown filed a reply to Plaintiff's objections on April 1, 2016. [ECF #132]. After thorough review of all motions and their corresponding response briefs, this Court issues the following Order.

## Background

On April 28, 2015, Plaintiff filed this action pursuant to 42 U.S.C. § 1983 against Defendants, alleging violations of his constitutional rights, including deliberate indifference to his serious medical

---

[1] Attached to Defendants' motion for summary judgment is an affidavit from Captain William Brightharp. It appears that Captain Brightharp has been incorrectly identified in the caption and subsequent pleadings as "Captain Brighthart". Accordingly, Captain Brighthart will be correctly identified as Defendant Brightharp in this Order from this point forward.

needs, excessive force, wrongful use of force, retaliation and failure to protect. [ECF #1].   At all times

relevant to the allegations contained within the Complaint, Plaintiff was incarcerated at LCI.

The facts as alleged by Plaintiff are adequately set forth in the Magistrate Judge's Reports and

Recommendations.  Briefly, Plaintiff alleges that while restrained in belly chains and cuffs, he fell down

a flight of stairs. [ECF #1, p. 3].  While on the ground, he alleges that Defendant Hamilton, along with

other officers, including two unknown officers, stood by discussing "what should be done." [ECF #1,

p. 3].  Defendant Brown, a nurse, came to assess Plaintiff, and according to Plaintiff, re-positioned his

legs and told him he was fine. [ECF #1, p. 4].   Defendant Brown disputes Plaintiff's allegations.

Defendant Brown contends that she examined Plaintiff  after he complained of back pain following a

fall down the stairs. [ECF #109-2, ¶ 5].  She took his vital signs, noted that his skin was warm and

intact, checked his neurological signs, assessed his lower extremity range of motion and sensation, all

indicating a normal lumbar exam.  [ECDF #109-2, ¶ 5]. Upon request of Plaintiff, she called another

nurse to discuss the results of the examination. [ECF #109-2, ¶ 9].  That nurse agreed with Defendant

Brown's assessment. [ECF #109-2, ¶ 9].  Defendant Brown cleared Plaintiff to return to his cell. [ECF

#109-2, ¶ 9].  Defendant Brown later contends she spoke with Plaintiff at his prison door and counseled

him regarding Standing Order #27, which provides the standard treatment for lower back pain. [ECF

#109-2, ¶ ¶ 11-12].  Defendant Brown denies Plaintiff ever complained of right shoulder pain. [ECF

#109-2, ¶ 14].  The medical records from that day do not indicate Plaintiff complained of shoulder pain.

[ECF #109-2].  Defendant Brown attached a copy of Plaintiff's medical records to her motion to support

the allegations in her affidavit. [ECF #109-2].

Plaintiff next alleges that upon conversing with Defendant Hamilton and Defendant Miller,

Defendant Brightharp gave instructions to move Plaintiff back to his cell. [ECF #1, p. 4].  Plaintiff

alleges Defendant Ackerman and Defendant Williams (identified previously as an "unknown black male officer") picked him up by the arms and dragged him up the steps to his cell. [ECF #1, p. 4]. Plaintiff alleges that despite the efforts of other inmates attempting to aid Plaintiff in receiving medical attention, Defendant Hamilton and Defendant Brightharp ignored these requests. [ECF #1, p. 5]. Plaintiff alleges that Defendant Nurse Brown did check on him during "pill pass" and she told him to sign up for sick call. [ECF #1, p. 5]. However, Plaintiff contends that when he requested the required forms from Defendant Simmons, his request was denied. [ECF #1, p. 5]. Plaintiff contends that he requested the use of a phone to report the staff's actions but was denied this request by Defendant Hamilton and Defendant Miller. [ECF #1, p. 5]. Plaintiff contends that Defendant Thompson informed his family members that he was fine and his medical needs were taken care of at LCI. [ECF #1, p. 5]. Finally, Plaintiff contends that upon transfer to McCormick Correctional Institute, he was given a "proper regimen" of treatment, and x-rays and an MRI, performed on October 6, 2014, revealed a dislocated shoulder. [ECF #1, p. 6]; [ECF #50-1, p. 4]. Plaintiff contends his shoulder was dislocated during the July 3, 2014 fall down the stairs at LCI. [ECF #1]. In the medical records provided to the Court, it appears Plaintiff first complained on shoulder pain on July 24, 2014, after he was transferred to McCormick Correctional Institute. [ECF #50-1, p. 4].

The Defendants attached affidavits setting forth their version of events to their motion for summary judgment. [ECF #56 and ECF #109]. Defendant Brown provided an affidavit wherein she explained that on July 3, 2014, she responded to a call to assess Plaintiff subsequent to a fall down a flight of stairs. [ECF #109-2]. She then assessed his lower extremity range of motion, sensation in his legs, and performed a lumbar exam though Plaintiff would not move, so she could not visually assess

4

his back. [ECF #109-2]. She assessed him as having lower back pain and cleared him to return to his cell. [ECF #109-2].

Defendant Ackerman states that he arrived shortly after he heard other inmates yelling, "man down." [ECF #56-3, ¶ 3]. Defendant Ackerman further states that Plaintiff did not appear to be in any apparent distress while being examined by Defendant Brown, who arrived shortly after the responding officers found Plaintiff on the ground. [ECF #56-3, ¶ 4]. Defendant Ackerman states that Plaintiff refused to cooperate when Defendant Brown examined him, and further, refused to stand up and return to his cell after he was examined. [ECF #56-3, ¶ 4]. Defendant Miller states that he responded to the scene when he heard a call for First Responders, officers designated to respond to this type of situation. [ECF #56-4, ¶ 4]. Defendant Miller said he spoke with Plaintiff and he had no apparent injury, nor did he appear to be in distress. [ECF #56-4, ¶ 5]. Defendant Miller states that while Plaintiff was examined by Defendant Brown, he was smiling and did not appear to be in any discomfort. [ECF #56-3, ¶ 5]. Defendant Brightharp states in his affidavit that Plaintiff had apparently fallen down the stairs after leaving the computer room where he was performing legal research unescorted by an officer. [ECF #56-4, ¶ 5]. Defendant Brightharp states he personally spoke with Plaintiff who did not appear to be in any distress; however, he still contacted medical personnel to arrive on the scene. [ECF #56-6, ¶ 6]. Defendant Brightharp states that Plaintiff did not appear to be in any distress. [ECF #56-3, ¶ 7]. Defendant Brightharp states that when Plaintiff returned to his room, he was able to stand at the door to have his restraints removed and lift his legs so that the leg irons could be removed, as well. [ECF #56-6, ¶ 6]. Two other employees corroborated the Defendants' version of events, including Andre Powell [ECF #56-2] and Thomas Hamilton. [ECF #56-5]. Finally, Defendant Thompson, the associate warden at LCI, provided an affidavit stating that he had no personal knowledge of the events that

occurred when Plaintiff fell. [ECF #56-7, ¶ 3]. He also stated that while he does speak to the parents of many inmates, he does not recall speaking with Plaintiff's mother regarding his care. [ECF #56-7, ¶ 2].

As part of his response to the motions for summary judgment, Plaintiff filed a motion for late entry on January 4, 2016, requesting permission to file interrogatory responses he received from Defendants that he alleges "shed light on the uncontested facts of the case and overall circumstances of events on July 3, 2014." [ECF #107]. This motion has not been ruled upon at this point. While this motion is now technically moot, this Court in its discretion reviewed the interrogatory responses and considered the responses in conjunction with plaintiff's other pleadings.

### Standards of Review

### I.    Review of the Magistrate Judge's Two Reports & Recommendations

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a *de novo* determination of those portions of the report and recommendation to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The right to *de novo* review may be waived by the failure to file timely objections. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The district court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id*. However, the Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations." *Id*.

## II.     Summary Judgment Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991).  The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.*  However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Defendants move for summary judgment and seek dismissal of Plaintiff's § 1983 action arguing Plaintiff is unable to satisfy the legal standard for the requested relief.  Defendant Brown argues that she is entitled to summary judgment for the following reasons: (1) she was not deliberately indifferent to Plaintiff's serious medical needs; (2) she is protected by the doctrine of qualified immunity; (3) Plaintiff's claims are barred by the Prison Litigation Reform Act; and (4) Plaintiff's claims should be dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) & 1915A(b)(1). The remaining Defendants move for summary judgment and seek dismissal of Plaintiff's § 1983 action arguing Plaintiff is unable to satisfy the legal standard because: (1) Plaintiff's claims do not fall within the scope of 42 U.S.C. § 1983; (2) Defendants are entitled to qualified immunity; (3) Plaintiff's claims are barred

by the Prison Litigation Reform Act; (4) Defendants are not subject to suit under 42 U.S.C. § 1983; (5) Defendants are entitled to Eleventh Amendment immunity; and (6) Plaintiff's claims should be dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) & 1915A(b)(1).

Plaintiff has also moved for summary judgment as to all of his claims because he alleges he has met the standard of showing Defendants were deliberately indifferent to his serious medical needs and that the named officers and supervisors used excessive force. [ECF #91-1].

### Discussion

### I. Defendant Marchelle Brown's Summary Judgment Motion

Defendant Brown moves for summary judgment, contending that no material issue of fact exists as to whether she was deliberately indifferent to Plaintiff's serious medical needs, Plaintiff's claims are subject to the doctrine of qualified immunity, and the claims are barred by the Prison Litigation Reform Act ("PLRA"). [ECF #109]. The Magistrate Judge recommends granting Defendant Brown's motion because Plaintiff fails to present evidence sufficient to create a material fact as to whether Defendant Brown was deliberately indifferent to his serious medical needs. [ECF #124, p. 9]. The Magistrate Judge considered the fact that Defendant Brown performed an evaluation on Plaintiff, consulted another practitioner regarding Plaintiff's condition, spoke with Plaintiff in his cell later in the day and gave instructions to the night medical staff to provide Plaintiff with medication. [ECF #124, p. 10]. According to the Magistrate Judge, Plaintiff's allegations amount to a disagreement in the treatment provided, which generally fails to state a claim under the requisite standard. [ECF #124, p. 10].

Plaintiff objects to this finding, implying that the Magistrate Judge came to this conclusion because the Magistrate Judge does not believe Plaintiff actually fell. [ECF #129, p. 1]. He contends that the foundation of Defendant Brown's motion relies upon what he claims are false assertions by another

8

officer, Mr. Powell, that Plaintiff never fell. [ECF #129, p. 2]. Plaintiff does not otherwise dispute any of the statements contained in Defendant Brown's affidavit regarding her treatment of Plaintiff. However, in his response to Defendant Brown's motion for summary judgment, Plaintiff contends that he never received any medical treatment the day he fell.[2] Additionally, he argues that the medical records from SCDC in Columbia, where he was seen after his transfer from LCI, indicate he suffers from a dislocated shoulder, thus calling Defendant's Brown's allegations into doubt. [ECF #122, p. 2]. Plaintiff attaches his medical records to his response to summary judgment, which show that he complained of shoulder pain to the physicians at McCormick Correctional Institute. [ECF #91-3, p. 4].

The Eighth Amendment prohibits the deliberate indifference by prison officials to the serious medical needs of prisoners because it constitutes unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to state a claim under the Eighth Amendment, a prisoner must allege that the prison official acted with a sufficiently culpable state of mind and "that the deprivation suffered or injury inflicted on the inmate was sufficiently serious." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009) (finding that this standard was met when a nurse ripped up the orders from a doctor prescribing treatment for an inmate). Deliberate indifference requires something more than "mere negligence;" but it can be satisfied by something less than acts or omissions for the purpose of causing harm or with the knowledge that harm will result. *Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995); *see also Jackson v. Sampson*, 536 Fed App'x. 356 (July 16, 2013). The Supreme Court has stated that prison doctors can exhibit deliberate indifference in at least three ways: (1) by the response to the prisoner's needs; (2) by the intentional denial or delay of access to medical care; (3) or

---

[2] This statement is inconsistent with other allegations he makes, including the receipt of medication and Defendant Brown authorizing Plaintiff to be moved to his cell. [ECF #1, pp. 4-5].

9

intentionally interfering with treatment once prescribed. *Smith*, 589 F.3d at 738-39.    A serious medical need has been defined as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

In viewing the facts and drawing all reasonable inferences in a light most favorable to Plaintiff, this Court agrees with the Magistrate Judge that summary judgment should be granted in favor of Defendant Brown.    Plaintiff concedes in his complaint that Defendant Brown responded to a call to assess Plaintiff after prison officials learned that Plaintiff fell down a flight of stairs. [ECF #1, p. 4]. Plaintiff alleges in his complaint that Defendant Brown came to his door during pill pass and told him he needed Motrin and rest. [ECF #1, p. 5].    Plaintiff does not dispute that Defendant Brown performed a lumbar spine evaluation on him soon after she assessed him. [ECF #129, p. 6].    Further, Plaintiff does not dispute that upon his request, she consulted with another practitioner regarding his condition. Indeed, Plaintiff alleges that he received medication on July 4, 2014, and was told the pills were from the nurse. [ECF #1].    He alleges he was later seen by a Nurse Arias (not named as a defendant in this case), who refused to order x-rays and an MRI of his back. [ECF #1].    In fact, the bulk of Plaintiff's argument is that the later medical records from SCDC show that as of September 2014, he was suffering from a dislocated shoulder.    However, on the date of the alleged incident, Defendant Brown did not diagnose Plaintiff as having a dislocated shoulder.    At best, this might establish a claim that Defendant Brown was medically negligent. *Shakka*, 71 F.3d at 167.    However, this Court finds that Plaintiff's allegations amount to a disagreement with the treatment provided to him while at LCI. *See Sansbury v. Southern Health Partners*, No. 5:14-cv-1115, 2015 WL 2449159, at *1 (D.S.C. May 21, 2015) (stating "Plaintiff's disagreement with the type of treatment does not rise to a deliberate indifference

claim). Further, any perceived negligence or malpractice on the part of a doctor in missing a diagnosis does not, on its own, support an inference of deliberate indifference by the doctor as to an inmate's medical needs. *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998). Accordingly, Plaintiff's objection to the dismissal of his claim that Defendant Brown violated his constitutional rights are overruled.

However, even assuming Plaintiff has somehow presented a genuine issue of material fact as to whether Defendant Brown's conduct amounts to deliberate indifference to Plaintiff's serious medical needs, she would still be entitled to summary judgment under the doctrine of qualified immunity.[3] Plaintiff does not object to this finding by the Magistrate Judge. [ECF #129]. Accordingly, the Court finds no clear error in its review of the analysis in the Report and Recommendation regarding Defendant Brown's protection under the doctrine of qualified immunity. *See Diamond*, 416 F.3d at 315 (stating a district court need only review the magistrate judge's R & R for clear error in the absence of specific objections). Additionally, although *de novo* review is not required in light of Plaintiff's failure to object to the application of qualified immunity, the Court has nonetheless exercised its discretion and conducted a *de novo* review of this Report and Recommendation. Qualified immunity protects government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Defendant Brown did not transgress any constitutional right of which a reasonable person would have known. Accordingly,

---

[3] Defendant Brown is employed by MedFirst, a company that provides medical staffing services to the SCDC. As indicated by Defendant Brown in her motion for summary judgment, the protection provided under the qualified immunity doctrine extends to a government contractor acting within the scope of her validly conferred authority. *See generally In re KBR, Inc., Burn Pit Litigation*, 744 F.3d 326, 343-44 (4th Cir. 2014).

this Court adopts the recommendation of the Magistrate Judge and grants Defendant Brown's motion for summary judgment.

## II. Remaining Defendants' Motion for Summary Judgment

The Magistrate Judge recommends granting summary judgment to the remaining Defendants due to the absence of a genuine issue of material fact with respect to Plaintiff's allegations that they were deliberately indifferent to Plaintiff's serious medical needs and that Defendants used excessive force in returning Plaintiff to his cell. [ECF #125, p. 14]. The Magistrate Judge further recommends granting Defendants' motion for summary judgment based on the protections afforded by the qualified immunity doctrine and immunity under the Eleventh Amendment. [ECF #125, pp. 18, 20].

Plaintiff filed simultaneous objections to both sets of motions for summary judgment filed by Defendants. As to these Defendants' claims, Plaintiff objects to the findings of the Magistrate Judge to the extent he relies upon the affidavits of individuals who claim Plaintiff never fell (specifically, Ofc. Powell). [ECF #129, pp. 1-2]. Indeed, Plaintiff states "[t]he Defendants['] foundation of defense partially rests in the assertion that Chisolm never fell and that Ofc. Powell was witness to that statement." [ECF #129, p. 2]. However, this Court's review of the Report and Recommendation does not suggest that any of the recommendations were made upon the assumption that Plaintiff did not fall or was somehow disingenuous in the allegations in his complaint. Accordingly, to the extent Plaintiff argues that the Report and Recommendation relies upon false statements by Ofc. Powell, the Court overrules this objection.

## A. Deliberate Indifference Claim

Plaintiff objects to the recommendation that his claims that Defendants were deliberately indifferent to his serious medical needs should be dismissed, based on his allegations that the

12

individuals providing affidavits in support of Defendants' motion for summary judgment did not provide truthful statements. [ECF #129, p. 6]. Within Plaintiff's motion for summary judgment, he alleges that the Defendant officers were deliberately indifferent to his serious medical needs because "they knew that a man was injured and they could easily infer that moving him by force would result in further injury." [ECF #91-1, p. 6]. Though he does not specifically object to the behavior of these Defendants, considered in the Magistrate Judge's recommendation, that the medical indifference claim against these Defendants be dismissed, this Court will consider the arguments he made in his own motion for summary judgment regarding this claim.

This Court previously set forth the standard to prove that an individual was deliberately indifferent to one's serious medical needs. *See generally Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995) (deliberate indifference requires something more than "mere negligence;" but it can be satisfied by something less than acts or omissions for the purpose of causing harm or with the knowledge that harm will result). The subjective component of the test can be satisfied by showing that an individual is aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw that inference. *Quinones*, 145 F.3d at 167 (4th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Prison officials are not liable if they may have known the underlying facts, but believed that the risk was insubstantial or nonexistent. *Id.* In other words, consciousness of a serious risk is required for Plaintiff to state a claim for relief. *Id.* Here, Defendants contacted medical personnel upon learning Plaintiff had fallen down a flight of stairs. [ECF #56-1, p. 6]. Plaintiff admits in his pleadings that officers responded after he fell down a flight of stairs. [ECF #1, p. 3]. Further, he admits that medical personnel, specifically Defendant Brown, were called to assess his medical condition. [ECF #1, p. 4]. Finally, he asserts that he was not moved by these

13

Defendants until after Defendant Brown determined he was not suffering from an acute injury. Under these facts, even examining the facts in the light most favorable to Plaintiff, he does not raise a genuine issue of material fact as to whether these Defendants were deliberately indifferent to his needs. [ECF #1, p. 4]. Further, Defendants assert that they relied upon the professional opinion of the nurse responsible for assessing Plaintiff who informed them that Plaintiff could return to his cell. Plaintiff does not dispute this allegation. After Defendant Brown's assessment, Plaintiff refused to get off the ground and return to his cell. [ECF #56-1, p. 4]. Defendant Ackerman and Defendant Williams then removed Plaintiff from the ground and returned him to his cell. Plaintiff argues they recklessly disregarded a serious medical need based upon these facts. However, Plaintiff has not presented any facts tending to suggest that Defendants *were aware* that Plaintiff was subject to a substantial risk of serious harm, or that they were deliberately indifferent to his medical needs when they relied upon Defendant Nurse Brown. Accordingly, there is no genuine issue of material fact as to whether these Defendants were deliberately indifferent to Plaintiff's serious medical needs.

### B. Excessive Force Claim

Plaintiff objects to the recommendation of the dismissal of his excessive force claim against Defendants (other than Defendant Brown) because he alleges his statements, along with medical records, support his claim that these Defendants acted maliciously and ignored his assertions of pain and the fact that he had a dislocated shoulder when they dragged him up the stairs. [ECF #129, p. 5].[4] Plaintiff alleges in his objections that there was videotape of the incident, and he further submits the affidavits of three inmates who he claims support his claim for relief. [ECF #91-2]. The affidavits of

---

[4] In his complaint, Plaintiff alleges that Defendants Miller and Hamilton supervised "the use of force movement." He alleges Defendant Ackerman and an "unknown B/M officer" (now known as Defendant Williams) are the officers who carried him up the stairs.

14

three inmates (Sok Bun, Cody Inman and Mike Grey) are attached to Plaintiff's response to Defendant

Brown's motion to dismiss. [ECF #50-1, pp. 12-17]. One of the affiants, Mr. Bun, states that he was

unable to witness what was going on at the bottom of the stairs. [ECF #50-1, p. 16]. All of the affiants

generally attest to the fact that Plaintiff fell down a flight of stairs, was on the ground for an unknown

period of time, and that Defendant Brown eventually showed up and interacted with Plaintiff. [ECF

#50-1, pp. 12-17]. Two of the affiants state that officers "dragged" Plaintiff to his cell. [ECF #50-1,

pp. 12, 16]. The third affiant states he saw the force team "pick Mr. Chisolm up and place him back into

his cell." [ECF #50-1, p. 15].

  The Eighth Amendment, prohibiting the infliction of cruel and unusual punishments, protects

inmates from inhumane treatment and conditions while imprisoned. *Williams v. Benjamin*, 77 F.3d 756,

761 (4th Cir. 1996). In order to analyze an alleged violation under the Eighth Amendment, the court

must inquire as to whether the prison official acted with a sufficiently culpable state of mind (the

subjective component), and whether the alleged deprivation suffered or injury inflicted was sufficiently

serious (the objective component). *Id.* When an inmate claims that prison officials used excessive force,

the inmate must meet a higher standard to establish the subjective component of the analysis. *Id.* In

light of the fact that officers are entitled to use appropriate force to quell prison disturbances and must

often make decisions "in haste," a prisoner alleging use of excessive force must demonstrate that

officials applied the force "maliciously and sadistically for the very purpose of causing harm." *Id.*

However, the inmate does not have to meet as demanding a showing under the objective component

because "when prison officials maliciously and sadistically use force to cause harm . . . contemporary

standards or decency are always violated whether or not significant injury is evident. *Wilkins v. Gaddy*,

559 U.S. 34, 37 (2010). The Supreme Court has identified the following factors to determine whether

a prison official's actions were carried out "maliciously and sadistically:" (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).  In the context of a prison disturbance, the determination of whether a violation occurred rests upon whether the force was applied in a good faith effort to restore discipline. *Gaddy*, 559 U.S. at 37.

Plaintiff's pleadings indicate that Defendant Hamilton arrived at the location where he fell and spoke with other officers about the incident. [ECF #1, p. 3].  Plaintiff alleges Defendant Brightharp, Defendant Miller, and Defendant Williams were present when he was moved from the floor to his cell. [ECF #1, p. 4].  He alleges Defendant Brightharp gave the instruction to move Plaintiff. [ECF #1, p. 4]. He further alleges Defendant Miller and Hamilton "received and relayed the instructions" of Defendant Brightharp. [ECF #1, p. 4].  Finally, he alleges Defendant Ackerman and Defendant Williams actually picked him up and dragged him to his room. [ECF #1, p. 4].

With respect to Defendant Thompson, Plaintiff alleges a general supervisory liability claim, as Defendant Thompson was allegedly not present at the incident. Otherwise, it is undisputed that Plaintiff refused to rise from where he had fallen and walk back to his cell.  For his part, Plaintiff alleges he refused this command because he did not want to further injure himself. [ECF #129, p. 6].

Taking into account all of Plaintiff's statements in a light most favorable to him, this Court does not find a genuine issue of material fact exists regarding whether Defendants used excessive force against Plaintiff.  Plaintiff's allegations, along with the allegations of his affiants, do not establish that the officers acted "maliciously and sadistically."  Plaintiff does not dispute that the Defendants who

16

arrived at the scene requested medical attention for Plaintiff.  These Defendants relied upon Defendant Brown's medical assessment, the nurse who responded to the request for medical attention, to conclude that Plaintiff could return to his cell. As set forth in their affidavits discussed earlier in this Order, several Defendants claim Plaintiff refused to return to his cell.  Thus, the Defendants involved in placing Plaintiff back in his cell were required to carry him due to his refusal to walk.  [ECF #56-3]. Plaintiff acknowledges that he did not respond to requests by Defendant Brown to examine his back or to stand up after being on the ground, but he maintains that he feared he would further injure himself. Otherwise, Plaintiff does not provide any allegations or facts to support a claim that any of the Defendants acted "maliciously or sadistically" in physically relocating him back to his cell.  Considering the factors used to determine whether an individual acted sadistically and maliciously, these Defendants apparently believed that continued requests to ask Plaintiff to stand were futile; thus, the application of force makes sense in light of the security threat associated with an inmate remaining on the ground. Plaintiff also does not allege that the officers actually injured him in any way; instead, he alleges he injured his back after falling down the stairs.  Accordingly, a review of the entire record does not reveal a genuine issue of material fact as to whether Defendants acted maliciously or sadistically for the sole purpose of causing harm.

### C. Failure to Protect Claim

Plaintiff objects to the recommendation that his failure to protect claim should be dismissed because he alleges it was a failure on the part of Defendants to keep the computer room door unlocked. Other than including it in his complaint as a claim, Plaintiff did not explicitly allege facts related to this claim in his complaint, nor was it adequately briefed by any of the parties until Plaintiff filed these objections.  Generally, a failure to protect claim under the Eighth Amendment implicates the right of

17

a prisoner to be free from violence at the hands of other inmates. *See Price v. Sasser*, 65 F.3d 342, 345 (4th Cir. 1995). In order to establish a failure to protect claim, an inmate must establish: (1) the deprivation alleged must be objectively "sufficiently serious;" and (2) the prison official must have acted with a sufficiently culpable state of mind. *Id.* Generally, failure to protect claims involve claims that prison officials knew of a substantial risk of harm and disregarded that risk after a Plaintiff endures an injury suffered at the hands of another inmate. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Plaintiff's failure to protect claim is tied to the fact that he was left unattended in the computer room and was able to walk out of an unlocked door to the stairwell where he fell. The Defendants in this case allege that the door is usually always locked, particularly since Plaintiff was in a special housing unit. Further, the harm alleged by Plaintiff is attenuated, at best, to the fact that the door was left unlocked. Plaintiff chose to leave the computer room unattended. Based on the limited facts provided by Plaintiff related to this claim, this Court does not find a genuine issue of material fact exists regarding a failure to protect Plaintiff. The fact that Plaintiff left the computer room unescorted may sound in negligence on the part of the prison staff, but it does not establish a failure to protect claim, as Plaintiff has not shown the Defendants deliberately intended to leave the door unlocked and create a situation where Plaintiff might incur harm. Further, the fall down a flight of stairs subsequent to him leaving the computer room is too attenuated from the claim that a door was left unlocked in violation of any alleged policy to establish a prime facie failure to protect claim. Certainly, there is no allegation of Plaintiff being attached by a fellow inmate. Accordingly, this objection is overruled.

### D. Qualified Immunity

Within his filed objections, Plaintiff does not object to the application of qualified immunity. Accordingly, the Court finds no clear error in its review of the analysis in the Report and

Recommendation regarding protection under the doctrine of qualified immunity. *See Diamond*, 416 F.3d at 315 (stating a district court need only review the magistrate judge's R & R for clear error in the absence of specific objections). However, even if there were an objection, it would be without merit. Plaintiff previously alleged that Defendants should not be protected by the doctrine of qualified immunity in his own motion for summary judgment because he alleges they violated his constitutional rights. [ECF # 91-1, p. 10]. Plaintiff alleges he was dragged up the stairs by officers after they knew he had a back injury and then tried to cover up their past actions and evade direct questions regarding the incident. [ECF #91-1, p. 10]. Plaintiff argues that these are violations of the Eighth Amendment, which prohibits the government from imposing cruel and unusual punishment, and this violation of his constitutional rights precludes the application of qualified immunity. Beyond these allegations, he does not otherwise establish what constitutional right has been violated. As the Magistrate Judge explained, despite Plaintiff's protestations to the contrary, Plaintiff failed to show Defendants violated any of his constitutional rights. [ECF #131, p. 13].

Qualified immunity acts as a shield to prevent government officials, provided their conduct does not violate a clearly established statutory or constitutional right. *Sheehan*, 735 F.3d at 153. As discussed earlier in this Order, the record reveals that Defendants have not violated Plaintiff's statutory or constitutional rights. In response to Defendant Brown's medical assessment that Plaintiff was able to return to his cell, Defendants Ackerman and Williams escorted him back to the room. The record reveals that Plaintiff did not want to return to his room because he believed he had an injured back. Plaintiff alleges that Defendant Brightharp told him he would have to be moved because he was a "security issue." [ECF #1, p. 4]. Plaintiff alleges Defendants Miller and Hamilton supervised the use of force against him pursuant to Defendant Brightharp's instructions. [ECF #1, p. 4]. Plaintiff alleges

Defendant Ackerman and an unknown black male officer (Defendant Williams) dragged him to his room. [ECF #1, p. 4]. Plaintiff alleges Defendants Hamilton and Brightharp ignored another inmate's protestations that he was injured. [ECF #1, p. 5]. Defendants were faced with an inmate who needed to be transported back to his room, based on the medical assessment of Defendant Brown. Prison discipline remains largely within the discretion of prison authorities. *Breeden v. Jackson*, 457 F.2d 578, 580 (4th Cir. 1972). Federal courts decline to intervene absent a situation where a prisoner's paramount federal constitutional or statutory rights are involved. *Id.* Here, while the medical records from SCDC dated several months after the incident on July 3, 2014, indicate Plaintiff suffers from a shoulder injury, these records were not available to Defendants at the time they moved Plaintiff to his cell. In other words, this information was unavailable to Defendants at the time he fell down the stairs. A review of the record does not reveal that Defendants, armed with the knowledge that Plaintiff was injured, sadistically sought to inflict pain. Defendants actions in moving Plaintiff against his wishes do not rise to a transgression of any constitutional rights of which a reasonable person should have known.

### E. Eleventh Amendment Immunity

As previously noted, Plaintiff does not object to the Magistrate Judge's finding that even if Plaintiff could prove that Defendants violated his constitutional or statutory rights, Defendants are entitled to immunity protection. While Plaintiff states the Defendants are not entitled to immunity protection in his own motion for summary judgment, he does not otherwise set forth a legal argument detailing why Eleventh Amendment Immunity should not apply in this case in his objections. Accordingly, the Court finds no clear error in its review of the analysis in the Report and Recommendation regarding protection under the doctrine of Eleventh Amendment immunity. *See Diamond*, 416 F.3d at 315 (stating a district court need only review the magistrate judge's R & R for

clear error in the absence of specific objections). The Eleventh Amendment bars individuals from bringing suits in federal courts for money damages against an "unconsenting State." *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996). Therefore, the Magistrate Judge found that pursuant to the Eleventh Amendment, to the extent Defendants have been sued in their "official capacity," i.e., against the state itself; the case must be dismissed. *Will v. Mich. Dept. Of State Police*, 491 U.S. 58 (1989). Plaintiff does not object to the Magistrate Judge's Eleventh Amendment immunity analysis, other than to say it does not apply. This Court agrees with the Magistrate Judge's application of Eleventh Amendment immunity in this case. Where as here, Plaintiff makes allegations against state officials who were acting in their official capacity, this suit is actually against the State and thus not cognizable. Accordingly, any objection to the application of Eleventh Amendment immunity is overruled, to the extent he sued Defendants in their official capacity.

Finally, Plaintiff alleges in his own motion for summary judgment that Defendant Thompson, associate warden of LCI, was aware that "no treatment was given and he had to approve the use of force." [ECF #91-1, p. 6]. Plaintiff also alleges that Defendant Thompson "clearly approved everyone not following policy and the denial of treatment to Chisolm." [ECF #91-1, p. 6]. Based on these allegations, it appears Plaintiff seeks to make a supervisory liability claim against Defendant Thompson. Under § 1983, liability will lie only where a plaintiff affirmatively shows that the official charged acted personally in the deprivation of the plaintiff's rights. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). The doctrine of respondeat superior does not apply to § 1983 claims. *Id.* First, Defendant Thompson provided an affidavit wherein he states that he had no personal knowledge of the incident concerning Plaintiff on July 3, 2014, nor would he typically respond to an incident of this nature. [ECF #56-7, p. 1]. Second, this Court finds that there is no underlying § 1983 liability of the subordinate

21

correctional officers that Plaintiff claims Defendant Thompson oversaw. Accordingly, this Court finds that Plaintiff has failed to establish a cognizable claim against Defendant Thompson.

The Magistrate Judge recommends summary dismissal of any additional claim for relief under any state common law theory based on the fact that this Court can decline to continue an action as to any pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Here, Plaintiff did not object to the Magistrate Judge's recommendation of the dismissal of any pendent claims. However, in this Court's discretion, the Court has conducted a de novo review of the allegations by Plaintiff that appear to present a state law claim. After considering the fact that this Court is dismissing all other claims alleged against Defendants, this Court declines to exercise supplement jurisdiction over any Defendants under § 1367 under any conceivable state law claims.

## Conclusion

The Court has thoroughly reviewed the entire record, including Plaintiff's complaint [ECF #1], Defendant Brown's motion for summary judgment [ECF #109], the remaining Defendants' motion for summary judgment [ECF #56], Plaintiff's motion for summary judgment [ECF #91], all reply briefs [ECF #90; ECF #95; ECF #98; ECF #114; ECF #122], the Magistrate Judge's Reports and Recommendations [ECF #124; ECF #125], Plaintiff's objections to the Reports and Recommendations [ECF #129], the reply to objections by Defendants [ECF #131; ECF #132], and all other pleadings and the applicable law. Defendant's motion for late entry was considered by this Court, thus that motion is **GRANTED**. [ECF #107]. For the reasons stated above and by the Magistrate Judge, the Court overrules Plaintiff's objections and adopts and incorporates both of the Reports and Recommendations of the Magistrate Judge. [ECF #124; ECF #125].

22

**IT IS THEREFORE ORDERED** that Plaintiff's motion for summary judgment [ECF #91] is **DENIED. IT IS FURTHER ORDERED** that Defendants' Motions for Summary Judgment [ECF #56; ECF #109] are **GRANTED** in their entirety and that this case is **DISMISSED WITH PREJUDICE**, as to any federal claims. To the extent there are any state law claims, they are dismissed without prejudice, and this Court declines to exercise jurisdiction over any such claims.

**IT IS SO ORDERED**.

Florence, South Carolina                          s/ R. Bryan Harwell
August 18, 2016                                    R. Bryan Harwell
                                                   United States District Judge